IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>    v.<br><br>ANTHONY GADSON,<br><br>            Defendant. | Case No. 4:11-cr-00010-04-RRB<br><br>**ORDER DENYING AMENDED 28 U.S.C. § 2255 MOTION TO VACATE CONVICTION AND SENTENCE**<br>**[Docket No. 664]** |

## I.   MOTION PRESENTED

Before the Court is Anthony Gadson's Amended 28 U.S.C. § 2255 motion to vacate or set aside his conviction and sentence relating to a multiple-defendant drug conspiracy case.[1]   As discussed below, the matter has been fully briefed.[2]   Gadson requested an evidentiary hearing,[3] which the government opposed.[4]   Upon careful consideration of the claims advanced by Gadson, this Court DENIES his request for an evidentiary hearing and, on the briefing supplied by the parties, DENIES his petition to vacate his conviction and sentence.

---

[1] Dkts. 664; 665.
[2] *See* Dkts. 675; 682; 687.
[3] Dkts. 665 at 38; 682 at 20.
[4] Dkt. 675 at 39.

## II. BACKGROUND

### A.    The Indictment, Trial, Sentence, and Judgment

In 2011, a grand jury returned a multi-count superseding indictment against Gadson and various co-defendants stemming from a drug distribution conspiracy from 2009–2011.[5]    The indictment charged Gadson and co-defendants in Count 1 with conspiracy to distribute at least 500 grams of cocaine and other controlled substances in violation of 21 U.S.C. §§ 846, 841(a)(1) & (b)(1)(B), (C), & (D);[6] in Count 2 with possession with intent to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B), (C), & (D);[7] in Count 3 with possession of a firearm in furtherance of a drug offense in violation of 18 U.S.C. § 924(c)(1)(A)(i); and in Count 5 with Conspiracy to retaliate against a witness in violation of 18 U.S.C. § 1513(b)(2).[8]

A trial jury convicted Gadson on Counts 1, 2, and 3, but found him not guilty of Count 5, on October 11, 2011.[9]  In December 2011, the Court sentenced Gadson to 300 months:  240 months on Counts 1 and 2, to be served concurrently; and 60 months on Count 3 to be served consecutively to Counts 1 and 2.[10]

---

[5]  Dkt. 665 at 8.
[6]  Dkt. 121; *see also* Dkt. 665 at 8.
[7]  Dkt. 121.
[8]  *Id.*
[9]  Dkt. 665 at 9.
[10]  Dkt. 471 at 2.

*United States v. Gadson*                                                                 Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                                    Page 2
Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 2 of 54

## B.    Direct Appeal and First Motion to Vacate

Gadson appealed his conviction and sentence.[11]    The Ninth Circuit affirmed.[12]  Gadson filed a timely pro se motion to vacate pursuant to 28 U.S.C. § 2255 on May 23, 2016.[13]  Gadson moved for appointed counsel, which this Court granted.[14]  The Court ordered counsel to file either an Amended Motion or notice that Gadson would proceed *pro se*.[15]

## C.    Motion Practice Related to Gadson's Amended § 2255 Motion

Through counsel, Gadson filed an amended § 2255 motion to vacate,[16] with exhibits, and a memorandum in support of the motion.[17]    The government filed an opposition.[18]  Gadson replied.[19]  The government filed a sur-reply.[20]

### (1)    Gadson's motion to vacate

Gadson's motion to vacate contains four claims:  (1) Gadson's attorney was ineffective at the plea negotiations stage in violation of the Sixth Amendment;[21] (2) Gadson's due process rights were violated by false testimony at the grand jury, and ineffective assistance of counsel for failing to challenge the indictment;[22] (3) Gadson's attorney was ineffective for failing to move to suppress evidence from the search of

---

[11]  *See United States v. Gadson*, 763 F.3d 1189 (9th Cir. 2014), *cert denied*, 135 S. Ct. 2350 (2015).
[12]  *Id.*
[13]  Dkts. 641; 642; 643; *see also* Dkt. 665 at 9.
[14]  Dkts. 644; 647.
[15]  Dkt. 647.
[16]  Dkt. 664.
[17]  Dkt. 665.
[18]  Dkt. 675.
[19]  Dkt. 682.
[20]  Dkt. 687.
[21]  Dkt. 665 at 2.
[22]  *Id.*

*United States v. Gadson*                                                      Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                    Page 3

Case 4:11-cr-00010-RRB    Document 691    Filed 09/18/18    Page 3 of 54

Gadson's residence;[23] and (4) there is newly discovered evidence that likely would result in acquittal: one of the government's witnesses recants his trial testimony.[24] Gadson asks that his judgment of conviction and sentence be vacated, that the government be ordered to offer its previous plea deal to him, or that the Court order a new trial.[25] In addition, Gadson asks for an evidentiary hearing.[26]

Gadson argues that his attorney was ineffective at the plea negotiations stage because his attorney was inexperienced and advised him that the government's case against him was "weak," and because he informed Gadson that the longest sentence he could receive was 15 years.[27] Gadson claims that he rejected the plea deal based on this advice.[28] Gadson argues he was prejudiced because, had he pled, he "most likely would have received a sentence within or near the 108–135 month guideline range according to the terms of the plea agreement."[29] His sentence after trial was 25 years, or 300 months.[30] Gadson relies on the reasoning in *Lafler v. Cooper*[31] to argue when an attorney makes a "gross mischaracterization" of the predicted outcome and gives wrong advice on the possible consequences of going to trial, the result can amount to ineffective assistance of counsel;[32] and that the remedy is a re-offering of the original plea deal.[33]

---

[23] *Id.*
[24] *Id.* at 3.
[25] *Id.* at 38.
[26] *Id.*
[27] *Id.* at 22–23.
[28] *Id.* at 23.
[29] *Id.*
[30] *Id.*
[31] 566 U.S. 156, 162 (2012).
[32] Dkt. 665 at 21.
[33] *Id.* at 24.

*United States v. Gadson*                                      Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                Page 4

Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 4 of 54

Gadson next contends that the prosecutor presented false testimony to the grand jury and his attorney was ineffective because he later failed to move to dismiss the indictment.[34] At issue was an officer who testified that an informant told him that the informant had bought cocaine from an individual who went by "Ant."[35] The officer stated at grand jury that "Ant" was Gadson.[36] However, later, nine days before trial, the informant saw a photo of Gadson, apparently for the first time, and stated that he was not actually the person the informant knew to be "Ant."[37] Gadson alleges that at the time of the grand jury, the officer testifying knowingly presented the false testimony that the informant "'specifically identified' Gadson as the 'Ant' he bought drugs from."[38] He claims that the investigator knew that this testimony "was false at the time he testified before the grand jury."[39] Gadson alleges that this testimony was material to the decision to indict Gadson.[40] He also alleges that the prosecution was duty-bound to inform the grand jury about this information.[41] Gadson argues that his attorney was ineffective in his litigation of an eventual motion to dismiss the indictment based on the presentation of false testimony.[42] The motion was unsuccessful, Gadson argues, because it was untimely filed after trial started and because the motion itself was only two pages long and contained no case law.[43]

---

[34] *Id.* at 25.
[35] *Id.* at 26.
[36] *Id.*
[37] *Id.* at 27.
[38] *Id.*
[39] *Id.*
[40] *Id.* at 28.
[41] *Id.* at 27.
[42] *Id.* at 28.
[43] *Id.*

*United States v. Gadson*                                        Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                    Page 5
Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 5 of 54

Gadson states that the indictment would have been dismissed because of the false testimony that the informant "specifically identified" Ant as being Gadson.[44]

In Claim Three, Gadson asserts that his trial counsel was ineffective for failing to move to suppress evidence seized during the warrant-authorized search of Gadson's Fairbanks residence, and for failing to ask for a *Franks*[45] hearing.[46] He says that the warrant lacked probable cause to link him and his residence to illegal activity, the information relied on was stale and lacked a nexus to Gadson's residence; and even if it did provide sufficient probable cause on its face, material to the probable cause determination were false information and omitted facts, which ought to have been excluded under a *Franks* analysis. Gadson claims that a timely motion to suppress evidence would have been successful, had his attorney provided effective assistance and filed one.[47]

Finally, Gadson informs the Court that co-defendant Donte Edwards has recanted his trial testimony that inculpated Gadson. Gadson provides two affidavits by Edwards in support of his claim.[48] At trial, Edwards testified that: (1) he had purchased cocaine from Gadson, (2) Gadson had told him he was worried about a drug supplier's arrest during a traffic stop because it "could have messed up a lot of things," and (3) he saw Brandon Haynes give Gadson cash in a duffle bag.[49] Gadson says that Edwards's testimony was "critical" to the case against him.[50] If true, the argument continues,

---

[44] *Id.* at 29.
[45] *Franks v. Delaware*, 438 U.S. 154 (1978).
[46] Dkt. 665 at 29.
[47] *Id.* at 29–37.
[48] Dkt. 664-5.
[49] Dkt. 665 at 37.
[50] *Id.*

*United States v. Gadson*                                                    Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                    Page 6

Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 6 of 54

Edwards's recantation testimony would result in Gadson's acquittal.[51] Gadson also asserts that there would be a due process violation if the statement in Edwards's affidavit that an officer had pressured Edwards to implicate Gadson were true.[52] Gadson asks for an evidentiary hearing so that Edwards may testify.[53]

### (2) The government's opposition

The government opposes Gadson's collateral attack.[54] First, the government asserts that Gadson's argument that he received ineffective assistance of counsel at the plea negotiations stage, based on an analysis of *Lafler v. Cooper*, is not persuasive.[55] The government argues that Gadson's case is different from the defendant in *Lafler* because, unlike that defendant, Gadson never admitted guilt.[56] The government notes that the only evidence supporting Gadson's claim that his lawyer gave him incompetent advice are Gadson's own statements.[57] Even assuming Gadson's attorney did say the case was weak, as Gadson avers, the government argues that was not an unreasonable assessment.[58] Furthermore, the argument continues, the record supports the contention that Gadson's attorney "was clearly recommending that Gadson" take the plea deal, both pretrial and during the trial, and provides exhibits to Docket No. 675 that show the attorney actually engaged in plea negotiations, inconsistent with Gadson's claim.[59]

---

[51] *Id.* at 38.
[52] *Id.*
[53] *Id.*
[54] Dkt. 675.
[55] *Id.* at 9.
[56] *Id.*
[57] *Id.* at 9–10.
[58] *Id.* at 10–11.
[59] *Id.* at 11; *see* Dkts. 675-2–675-5.

*United States v. Gadson*                                                      Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                          Page 7
Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 7 of 54

The government next addresses Gadson's claim that he was prejudiced by the advice of counsel that his maximum sentence was 15 years.[60] The government notes that records of Gadson's arraignments show that he was advised of the maximum penalties of each of his charges, and that Gadson knew he could face up to life in prison after being arraigned.[61] The government asserts that Gadson would also have been aware of the § 851 enhancement after the prosecutor gave the defense a draft copy of the § 851 notice specifically stating the sentencing range of 10 years to life.[62] Because an error in assessing the Guidelines range is not ineffective when a defendant actually accepts a plea, the government argues, if a defendant *rejects* a plea based on that error instead, there is similarly no claim of ineffective assistance.[63]

The government suggests that Gadson's reliance on *Lafler* does not help. In *Lafler*, the parties agreed that the attorney had been incompetent. Here, the government does not agree that Gadson's defender was ineffective, and *Lafler* does not provide guidance on what would amount to ineffective assistance of counsel at the plea stage because that issue was conceded.[64] The government summarizes its opposition to Gadson's first claim: Gadson's attorney's performance did not fall below an objective standard of reasonableness; and the burden of any possible prejudice should rest with Gadson, as the attorney was "clearly recommending" that Gadson plead guilty.[65]

---

[60] Dkt. 675 at 12.
[61] *Id.*
[62] *Id.* at 13.
[63] *Id.*
[64] *Id.* at 15–16.
[65] *Id.* at 17.

*United States v. Gadson*                                              Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                    Page 8
Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 8 of 54

The government opposes Gadson's second claim that his attorney was ineffective for failing to dismiss the indictment for alleged grand jury perjury about "Ant."[66]  When Gadson's attorney moved to dismiss the indictment during trial, the government opposed because it was filed late (after trial had begun), there was inadequate briefing, and also on the merits because the contested statement was not perjury.[67]  The government argues that Gadson has made no showing that a timely filed motion to dismiss would have put Gadson in a different position:  even if dismissal were granted, it likely would have been without prejudice and Gadson simply would have been re-indicted before trial.[68]  The government also argues that the trial court would not have concluded that the erroneous testimony about "Ant's" identity was perjury.[69]  Even if it had been perjury, the government continues, there is no evidence that the prosecutor knew it was perjured.[70]  And, even if the testimony that the informant described "Ant" as Gadson were stricken, the court still could have concluded sufficient evidence remained that a grand jury could indict Gadson.[71]

The government opposes Gadson's third claim regarding his attorney's failure to file a suppression motion.[72]  The government argues that Gadson's attorney was not incompetent by not filing the motion, and that any motion would not have been successful.  Because warrants lacking probable cause are "saved" when officers rely on

---

[66] *Id.* at 18.
[67] *Id.*
[68] *Id.* at 19.
[69] *Id.* at 20–23.
[70] *Id.* at 25.
[71] *Id.* at 20, 23–24.
[72] *Id.* at 25.

*United States v. Gadson*                                    Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                    Page 9
Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 9 of 54

good faith in executing the warrant, Gadson must show that the warrant was "so lacking in indicia of probable cause" that reliance on it would be unreasonable.[73] The government asserts that Gadson cannot meet this standard. The government counters Gadson's argument that the information in the affidavit was "stale" and instead asserts it was timely evidence for a "regenerating conspiracy" of drug trafficking.[74]

The government also opposes Gadson's *Franks* challenge.[75] The government says that Gadson has failed to allege that the investigator knew or was reckless regarding any incorrect information in the affidavit.[76] Even if the incorrect information were omitted, the argument continues, the court still would have found the remaining evidence sufficient to support a finding of probable cause.[77] The government also argues that even if the correct evidence about Gadson had been provided, it would have only strengthened the probable cause in the warrant: instead of misidentifying "Ant," the affidavit would have stated that the informant saw Gadson present when he purchased drugs.[78]

Gadson's attorney's choice not to file the motion to suppress may well have been strategic, the government contends.[79] The government asserts that it will be difficult

---

[73] *Id.* at 25–26.
[74] *Id.* at 27–29.
[75] *Id.* at 29–30.
[76] *Id.* at 30.
[77] *Id.* at 33–34.
[78] *Id.* at 34.
[79] *Id.* at 34–35.

*United States v. Gadson*                                    Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]          Page 10
Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 10 of 54

for Gadson to show that not filing the motion was incompetence as opposed to a tactical choice.[80]

Lastly, the government disputes Gadson's final claim that he is entitled to a new trial based on witness Donte Edwards's recantation.[81]  It argues that a defendant is entitled to a new trial only when he can show that the recanted testimony was material to his conviction.[82]  At the time of trial, the government argues, Edwards already had made inconsistent statements, which were discussed in front of the jury.[83]  The government cites cases that witness recantation, especially from a co-defendant, should be "met with extreme skepticism."[84]  This is even more so when, as here, a witness recants his recantation and later states that he was pressured by the defendant and the defendant's family to write an affidavit that "was not entirely true."[85]

### (3)    Gadson's reply to the government's opposition

Gadson, in his reply,[86] counters that whether Gadson heard the maximum penalty at his arraignments or saw it in his plea letter is irrelevant.  He claims he had ineffective assistance of counsel because his attorney did not competently advise him of his sentencing exposure.[87]  He cites cases from the Second and Third Circuits in support.[88]

---

[80] *Id.* at 35.
[81] *Id.*
[82] *Id.* at 35–36.
[83] *Id.* at 36.
[84] *Id.* at 36–37.
[85] *Id.* at 35, 38–39.
[86] Dkt. 682.
[87] *Id.* at 7–8.
[88] *Id.* at 8.

*United States v. Gadson*                                                                      Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                    Page 11

Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 11 of 54

Gadson also argues that while the record shows his attorney engaged in plea negotiations and filed a notice of intent to change plea, his attorney still may have miscalculated the maximum penalty to Gadson's detriment.[89]  Gadson provides an email from his attorney during the pretrial negotiations stating that, due to his inexperience, Gadson may have received ineffective assistance from him.[90]  Gadson states that other witnesses—Gadson's family and a cell mate—swore that they understood Gadson believed his maximum exposure was 15 years.  He points to the record of his December 29, 2011, sentencing where he told the court that he was not aware of his actual maximum sentence when he decided to go to trial.[91]  He argues that, under these circumstances, it is reasonable to expect he would have taken a plea deal for 10 years if he had known he would receive a sentence of 25 years or more, and that he actually would have done so.[92]

Gadson argues that the government is wrong in alleging that his attorney had a tactical reason for failing to file a pretrial motion to dismiss the indictment because he actually filed the motion, he just filed it after trial had started, making it untimely.[93]  Gadson repeats his arguments that the motion would have succeeded on the merits because the testifying officer knew it was false at the time; that the prosecution failed in its duty to immediately inform the court and defense counsel when it learned that the officer's testimony was false and perjured.[94]  Gadson argues against the government's contention

---

[89] *Id.* at 8–9.
[90] *Id.* at 9.
[91] *Id.*
[92] *Id.*
[93] *Id.* at 10.
[94] *Id.* at 11.

*United States v. Gadson*                                                                      Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                              Page 12
Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 12 of 54

that he simply would have been re-indicted if the court granted dismissal; he states that there was no other direct evidence linking Gadson to drug sales and the grand jury would not have found probable cause to indict.[95]

Gadson again argues that the evidence from the search of his residence should have been suppressed.[96]  Gadson provides a factual accounting of the facts in the affidavit that would remain without specific information from the informant about Gadson's ties to the drug dealing operation.[97]  He then asserts again that suppression would have been required because the warrant affidavit would have been "so lacking in indicia of probable cause" that no officer could in good faith rely on it.[98]

Gadson continues, noting that even the government admits that the affidavit contained inaccurate information.[99]  He catalogues the misstatements and omissions as follows:

- The affiant said that two sources stated that Gadson lived at the Fouts Avenue residence, when no one had said anything about whether Gadson lived there.[100]

- The affidavit stated that "evidence located in the residence" showed that Gadson "lived or spent considerable time" there.[101]

- It was misleading to inform the judge that Gadson's fingerprint was on the box containing cocaine without

---

[95] *Id.* at 11–12.
[96] *Id.* at 12.
[97] *Id.* at 13–15.
[98] *Id.* at 15.
[99] *Id.*
[100] *Id.* at 16.  Gadson also revisits his argument from his second claim that Investigator Avery Thompson falsely stated that Joshua Voaklander, the confidential informant, bought cocaine from "Ant" who "Thompson incorrectly presumed was Gadson." *Id.*
[101] *Id.*

specifying that his print was on the outside of the box and the only prints on the cocaine inside were someone else's; thus, disclosing this information would have weakened the probable cause in the affidavit.[102]

- Investigator Thompson did not disclose that the informant received a dismissal of felony drug charges in exchange for the information he contributed to the affidavit.[103]

This last omission, standing alone, Gadson asserts, should have justified a *Franks* hearing, and it was error not to have moved for one.[104]

For his fourth claim that he should receive a new trial based on Edwards's recantation testimony, Gadson argues that the government's authority is limited to out-of-circuit cases that all were decided after the courts held evidentiary hearings.[105] Gadson argues that the government unfairly exaggerated what Edwards told officers after submitting his recantation.[106] He provides many excerpts from the interviews with officers that show that Edwards actually denied that Gadson pressured him to recant or that his statements in the recantation were untrue.[107]

Gadson argues that Edwards's now-recanted testimony was "critical evidence."[108] He states that, based on the sworn recantation, and considering what Edwards actually told officers afterwards, Gadson is entitled to an evidentiary hearing.[109]

---

[102] *Id.* at 17.
[103] *Id.*
[104] *Id.*
[105] *Id.* at 17–18.
[106] *Id.* at 18.
[107] *Id.* at 19.
[108] *Id.* at 20.
[109] *Id.*

*United States v. Gadson*                                      Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]          Page 14

Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 14 of 54

**(4)     The government's sur-reply**

For Gadson's first claim, the government points out that Gadson had a lower offer at the outset of the plea negotiations—less than 5 years—and he did not accept it then when he thought his maximum penalty was 15 years.   View this skeptically, the government contends.  Gadson does not explain why he did not accept those low pretrial offers.

There is no sur-reply on claim two, as Gadson had not included any new information in his reply.

As to Gadson's third claim, the government says that Gadson takes issue with the government's contention that other information connected Gadson to the Fouts residence for the purposes of finding probable cause to support a warrant.  The government says that because Gadson has not established that the statements were made knowingly or with reckless disregard for the truth, he cannot argue that the statements should have been removed from the probable cause determination.[110]   Additionally, the good faith warrant exception applies.

The government says that there are two parts to the inquiry whether Gadson should have been given a *Franks* hearing:   first, whether the misstatements were intentionally or knowingly false, or whether the FBI recklessly failed to verify them.[111] Without a showing of intentional or reckless presentation of false facts, Gadson would not have been entitled to a *Franks* hearing.  However, the government explains, if a *prima facie*

---

[110]  Dkt. 687 at 5.
[111]  *Id.* at 5–6.

*United States v. Gadson*                                                              Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                          Page 15
Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 15 of 54

showing had been made, the second step of the inquiry would be to ask whether the false statements are material.[112]

The government argues that Gadson has not made even a preliminary showing, let alone a substantial one, that the affiant knew or recklessly disregarded the accuracy of the statements at issue.[113]  The government asserts that the truth was not known until shortly before trial, so there cannot have been any knowing or reckless presentation of inaccurate facts to the judicial officer who made the probable cause determination.[114]  Therefore, there is no need to determine whether the inaccurate statements were material to a finding of probable cause.  Only knowing or recklessly made false statements would need to be excised.

The government makes a series of clarifications about Gadson's claims that the affidavit was misleading with regard to Gadson's fingerprints.[115]  First, Gadson's reply says that the affidavit should have specified, but did not, that his thumbprint was on the outside of the box and his prints did not match any of the prints found on the cocaine packaging inside the box.[116]  The government responds, citing a sentence in the affidavit that states the print was "on" the box, and argues that this cannot reasonably be read to mislead the reader that any fingerprints were found inside the box.[117]  The government also notes that there was no evidence that any prints were found or could be identified on the

---

[112] *Id.* at 6.
[113] *Id.*
[114] *Id.* at 7.
[115] *Id.* at 8.
[116] *See* Dkt. 682 at 17.
[117] Dkt. 687 at 8.

*United States v. Gadson*                                                           Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                                    Page 16

Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 16 of 54

cocaine packaging inside the box, so to argue "his prints did not match any of the prints found on the cocaine packaging inside the box"[118] is misleading.[119]

Second, Gadson's reply consistently refers to only one fingerprint that was identified as belonging to him.[120]  The government responds that, although the affidavit describes one fingerprint, a lab report actually revealed that two, not one, of Gadson's prints were on the shoebox, and those were the only two prints that could be identified at all.[121]  Such a discrepancy, the government contends, actually was advantageous to Gadson during the probable cause determination.[122]

Next, the government addresses Gadson's argument that the information in the affidavit about drug activity at the Fouts residence, at fourteen months old, was too stale to support a finding of probable cause.[123]  In his argument, Gadson concludes without analysis that the year-old information was stale, comparing cases where staleness had been found to invalidate a warrant when the information was aged at nine months or twenty-one months, but not at around two months or less.[124]  The government cites two additional cases that suggest that mere length of time passing would not make the Fouts residence information stale with respect to the warrant.[125]

---

[118]  *Id.* at 8–9.
[119]  *Id.*
[120]  *See, e.g.*, Dkt. 682 at 12, 14 n.1, 16, 17.
[121]  Dkt. 687 at 9.
[122]  *Id.* at 8.
[123]  *Id.* at 9–10; *see* Dkt. 682 at 13–14.
[124]  Dkt. 682 at 13–14.
[125]  Dkt. 687 at 9–10.

*United States v. Gadson*                                            Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                    Page 17
Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 17 of 54

The government concludes its sur-reply with the addition of a supplemental police report of an interview with recanting witness Donte Edwards that occurred on February 8, 2018.[126] In this interview, Investigator Thompson reported that Edwards said he did not write his recantation letter, and he had been "kind of forced and threatened" to write it.[127] Edwards also told the investigator that he wanted assurance that no charges would be filed against him.[128] The government argues that Edwards's recantation of his recantation of his testimony is reason to view the recantation as unreliable.

## III. ISSUES PRESENTED

We consider three ineffective assistance of counsel claims and a fourth claim of newly discovered evidence:

1. Was Gadson's trial counsel ineffective at the plea negotiations stage?

2. Was trial counsel ineffective for failing to file a successful motion to dismiss indictment?

3. Was trial counsel ineffective for failing to suppress evidence discovered at Gadson's residence pursuant to a search warrant?

4. Is Gadson entitled to a new trial in light of Donte Edwards's 2016 recantation of his trial testimony?

## IV. ANALYSIS

Gadson is not entitled to habeas relief to vacate his convictions and sentence based on any of his three ineffective assistance of counsel claims, or on his new evidence

---

[126] Dkt. 687-1.
[127] *Id.* at 3.
[128] *Id.*

*United States v. Gadson*                                                      Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                              Page 18

Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 18 of 54

claim. As explained below, Gadson cannot establish that his trial counsel's performance was deficient at the plea negotiations stage, during motion practice to dismiss the indictment, or for not filing a motion to suppress evidence. There is insufficient evidence that any of the attorney's decisions were outside the "wide range of reasonable professional assistance," especially given a strong presumption of competency.[129] Even if counsel's performance were deficient in any of the above areas, Gadson cannot establish prejudice. That is, Gadson has not shown a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[130] As to the newly discovered evidence claim, Gadson cannot establish the reliability of the witness's recantation and, therefore, is not entitled to relief.

## A. Gadson is Not Entitled to Habeas Relief for Ineffective Assistance of Counsel During Plea Negotiations

Gadson's § 2255 claims of ineffective assistance of counsel are based on the Sixth Amendment. To obtain relief, the petitioner must demonstrate that the constitutional violation had a "substantial and injurious effect" on the verdict or guilty plea.[131]

### (1) Applicable law for ineffective assistance generally

This Court uses the two-pronged test defined in *Strickland v. Washington*[132] to determine whether an attorney has provided ineffective assistance of counsel. The

---

[129] *Hedlund v. Ryan*, 854 F.3d 557, 576 (9th Cir. 2017) (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).

[130] *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (citing *Strickland*, 466 U.S. at 694).

[131] *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (cited in *United States v. Lewis*, 284 F. Supp. 3d 1152, 1155 (D. Or. 2018), *reconsideration denied*, 2018 WL 1014172 (D. Or. Feb. 21, 2018)).

[132] *466 U.S. 668 (1984).*

*United States v. Gadson*                                                    Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                    Page 19
Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 19 of 54

attorney's performance must be deficient and the deficiency must have been prejudicial.[133] The defendant has the burden of showing performance was "so deficient that it fell below 'an objective standard of reasonableness.'"[134]

Judicial scrutiny of an attorney's performance, especially in hindsight, is highly deferential.[135] Attorney conduct should be evaluated from the attorney's perspective at the time of the representation.[136] The attorney's performance is strongly presumed to fall within the wide range of reasonably professional competent assistance.[137] "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant."[138]

A defendant must establish prejudice by showing a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."[139] A reasonable probability is "sufficient to undermine confidence in the outcome."[140] Therefore, a defendant must make a greater showing than an error that may theoretically have some effect on the outcome of the proceeding. However, a showing by a preponderance of the evidence is not required by *Strickland*.[141]

---

[133] *Strickland*, 466 U.S. at 688.
[134] *Silva v. Woodford*, 279 F.3d 825, 836 (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 688).
[135] *Strickland*, 466 U.S. at 689.
[136] *Id.*
[137] *Id.*
[138] *Id.* at 692.
[139] *Id.* at 694.
[140] *Id.*
[141] *Duncan v. Ornoski*, 528 F.3d 1222, 1246 (9th Cir. 2008) (a petitioner only needs to demonstrate "omitted evidence is sufficient to undermine confidence in the outcome").

*United States v. Gadson*                                        Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]          Page 20

Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 20 of 54

A defendant must prove both deficient assistance and consequent prejudice.[142] The court may evaluate one or both prongs in determining whether to grant a defendant's habeas petition on these grounds. The court need not inquire whether an attorney's performance was deficient if such alleged deficiency could not have resulted in prejudice under *Strickland*.

For each of Gadson's three ineffective assistance of counsel claims, this opinion will refer to the above legal principles.

**(2)  Applicable law for ineffective assistance regarding plea negotiations**

The right to effective assistance of counsel is applicable at the plea bargaining stage.[143] An attorney's representation is deficient when he makes a "gross mischaracterization of the likely outcome . . . combined with the erroneous advice on the possible effects of going to trial,"[144] and the defendant declines a plea offer to go to trial.

To demonstrate prejudice at the plea negotiations stage, the defendant must show a "reasonable probability that, but for counsel's errors, [he] would not have gone to trial."[145] He must show a "reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances) that the court would have accepted its terms, and that the conviction or sentence, or both, under the

---

[142]  *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995) ("[P]etitioner bears the burden of establishing both.").

[143]  *Lafler v. Cooper*, 566 U.S. 156, 162 (2012).

[144]  *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986).

[145]  *Hedlund v. Ryan*, 854 F.3d 557, 578 (9th Cir. 2017).

*United States v. Gadson*  Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]  Page 21

Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 21 of 54

offer's terms would have been less severe than under the judgment and sentence that in fact were imposed."[146]

### (3)    Gadson has not established that his counsel's performance was deficient; and even if it were, he cannot demonstrate prejudice

Gadson contends that his attorney, during plea negotiations, provided ineffective assistance for the following reasons: first, his attorney was inexperienced; this case was his first federal jury trial.[147]  Second, his attorney advised Gadson that the government's case was "weak," and that the defense "may win."[148]  Third, counsel incorrectly assessed that Gadson faced a maximum sentence of 15 years should he lose at trial.[149]  Gadson eventually was convicted after trial, and received a sentence of 25 years.

#### (a)    Trial counsel's inexperience

In a habeas application, a petitioner must establish more than mere inexperience to show that his attorney's representation was deficient.  A petitioner "must point to specific acts or omissions that may have resulted from counsel's inexperience" to demonstrate a *Strickland* violation.[150]  Gadson is not entitled to relief on this sub-claim.

#### (b)    Counsel's advice that the government case was "weak" and Gadson's maximum sentence would be 15 years

Gadson explains that he rejected the government's plea offer[151] in which he could "reasonably expect to receive the 10-year mandatory minimum sentence" for two

---

[146] *Lafler v. Cooper*, 566 U.S. 156, 164 (2012) (cited with alterations in *Hedlund*, 854 F.3d at 578–79).

[147] Dkt. 665 at 22.

[148] *Id.* at 23.

[149] *Id.*

[150] *Woods v. Sinclair*, 764 F.3d 1109, 1132 (9th Cir. 2014).

[151] Dkt. 664-1 at 1–2.

*United States v. Gadson*                                                                    Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                          Page 22

Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 22 of 54

reasons: his lawyer advised that the case against him was weak, and, even if he lost at trial, his lawyer said Gadson's maximum sentence would be 15 years.[152]

Gadson presents evidence of his counsel's erroneous advice in the form of his own sworn declaration dated May 18, 2016,[153] and in declarations by co-defendant Willie Wilson,[154] and by siblings Gabrielle Haynes[155] and Matthew Haynes, which all reported various statements Gadson made about his case, plea offers, and possible sentence prior to going to trial.[156] Gadson also points to the record from his sentencing hearing on December 29, 2011, where he told the court he did not know his sentencing exposure before he elected to stand trial.[157]

---

[152] Dkt. 665 at 23.

[153] *See* Dkt. 643.

[154] *See id.* at 4. Wilson, Gadson's co-defendant in this case, declared in an undated statement that he remembered speaking to Gadson on September 28, 2011. Wilson described Gadson as having just returned from a meeting with his trial attorney, when Gadson reported that (1) he received a plea offer of 10 years, (2) his attorney believed the government case was weak and that Gadson could win, and (3) his maximum sentence, even if he lost at trial, would be 15 years. Wilson stated that Gadson often spoke of his understanding that the case against him was weak and that the maximum sentence, if he was convicted, was only 15 years. Wilson also stated that Wilson's trial attorney told him he agreed that Gadson's counsel could win at trial and that the government case was weak.

[155] *See id.* at 5. Gabrielle Haynes, in an undated declaration, stated that Gadson is her brother. She recalled Gadson telling her that he believed the government case against him was weak and that he believed his maximum sentence would be 15 years, even if he lost at trial. She stated that several of the people involved in the case who knew Gadson also had heard Gadson say he believed he would win and the case against him was weak.

[156] *See id.* at 6. Matthew Haynes, in an undated declaration, stated that Gadson was his brother and that they talked frequently after Gadson was arrested. He also expressed that Gadson told him that his attorney had advised that Gadson had a good chance of winning his case. Matthew Haynes knew that Gadson had considered and rejected the government's 10-year plea offer because Gadson believed that the case against him was weak and that his maximum sentence exposure was only 15 years. Matthew Haynes stated that he had heard the same information about Gadson's plea offer, maximum sentence, and chances of winning at trial from talking with Willie Wilson, who he says had the same understanding.

[157] Dkt. 665 at 23. Gadson cites his own words at his December 29, 2011, sentencing hearing to demonstrate that, at least from the time of sentencing, he consistently claimed that his attorney had failed to advise him that his sentencing range was 20 years to life during the plea negotiations stage.

*United States v. Gadson*                                                      Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                         Page 23

Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 23 of 54

However, the record otherwise does not support Gadson's bare assertion that his lawyer gave incorrect advice. Absent from the record is any declaration of trial counsel, or any correspondence from trial counsel tending to show he made these representations to Gadson as Gadson describes. There also is no objective evidence that Gadson's attorney advised Gadson that the case against him was weak and that he would win at trial. The record actually controverts Gadson's specific contention that he did not know his minimum sentence could be much greater than 15 years. Furthermore, the record supports the inference that Gadson's lawyer was helping Gadson negotiate a plea agreement, rather than insisting upon going to trial.

Even if Gadson could establish that his lawyer said the government case was weak, which is highly unlikely, this was not necessarily unreasonable at the time, and therefore not deficient. Gadson declares his attorney told him, "I feel like you will win at trial, because the Government case is weak against you, since it is not enough evidence to show your involvement in this conspiracy . . . to prove conspiracy, the government has to establish you committed an overt act. And our defense will be that you did not commit an overt act. . . ."[158] Before trial, it may have been reasonable for Gadson's attorney to make this determination. Before trial, as the government points out, neither Gadson nor his attorney knew the extent to which co-defendant Donte Edwards would testify against Gadson.[159] The government had no evidence of controlled drug buys from Gadson.[160]

---

[158] Dkt. 643 at 1–2 ¶ 5.
[159] Dkt. 675 at 10–11.
[160] *Id.* at 10.

*United States v. Gadson*                                          Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                Page 24

Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 24 of 54

Gadson did not live at the Fouts address, where most of his co-defendants resided.[161]  At trial, his attorney attempted to rebut the most incriminating evidence that Gadson's thumbprints were on the shoebox of cocaine and that Gadson possessed large amounts of cash in his residence.[162]  It was not necessarily ineffective that his rebuttal was not successful before the jury.[163]

Evidence in the record shows that the court told Gadson what his maximum sentence could be on more than one occasion.  On June 28, 2011, Gadson was arraigned on the first superseding indictment, and the district court magistrate judge advised him of his "general rights, charges and penalties."[164]  On August 5, 2011, the government sent a letter to Gadson informing him that he would be subject to the § 851 statutory enhancement.[165]  That letter characterized Gadson's mandatory *minimum* sentence as 15 years (which could increase if Gadson were to be convicted of the new retaliation count).[166]  Given all this, there is no reason to believe that Gadson's attorney was unaware of the penalties Gadson faced, or that he would have advised Gadson erroneously.

Evidence in the record shows that Gadson's attorney advised Gadson to plead guilty.  Gadson does not assert that his attorney failed to pass on the government's plea offers dated August 5, 2011,[167] and September 2, 2011,[168] which would constitute

---

[161] *Id.*
[162] *Id.* at 10, 11.
[163] *Id.*
[164] Dkt. 140; *see also* First Superseding Indictment at Dkt. 121.  At the arraignment, Gadson heard that he faced penalties of up to life in prison on his charges.  Dkt. 675 at 12.
[165] Dkt. 675-2 at 3.
[166] *Id.*
[167] *Id.* at 3–4.
[168] *Id.* at 1–2.

*United States v. Gadson*                                      Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                Page 25

Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 25 of 54

ineffective assistance of counsel under existing law.[169]  His attorney filed a notice of intent

to change plea.[170]  He proposed plea offers dated September 19, 2011,[171] and during trial

on October 1, 2011.[172]  Gadson's lawyer's communications with the government show he

had identified weaknesses in the government's case, but was nevertheless attempting to

reach a resolution.  Gadson provides no evidence that his lawyer advised him to go to trial

rather than accepting the plea deal.

Gadson declares that his attorney advised that Gadson faced a maximum

sentence of 15 years if Gadson rejected the government's plea offer and was found guilty

after trial; and in fact counsel "assured" Gadson he could not be sentenced to more than 15

years.[173]  Gadson states that he did not comprehend that he faced exposure to a maximum

sentence of 40 years, nor that the government might file a 21 U.S.C. § 851 sentencing

enhancement, thus increasing his maximum sentence to life.[174]  But, Gadson provides no

corroborating evidence that his attorney made these representations beyond his own

statements and declarations from friends and relatives recounting statements that Gadson

allegedly made.

Gadson cites the Second Circuit opinion in *United States v. Gordon*[175] for

the proposition that, even when a defendant may at some point receive accurate information

---

[169] *Missouri v. Frye*, 566 U.S. 134, 145 (2012) (failure to advise defendant of formal offers from the prosecution is ineffective assistance of counsel).

[170] Dkt. 675 at 11.

[171] Dkt. 675-4 at 4.

[172] Dkt. 675-5 at 1.

[173] Dkt. 643 at 1 ¶ 4, 2 ¶ 6.

[174] *Id.* at 2 ¶¶ 8, 12.

[175] 156 F.3d 376 (2d Cir. 1998).

*United States v. Gadson*                                                                                   Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                                     Page 26

Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 26 of 54

about his maximum sentence, if his attorney nevertheless mistakenly concludes a shorter maximum sentence, that conduct may fall below an objective standard of reasonable competence.[176]   However, *Gordon* is different because the attorney in *Gordon* became aware of his error in advising his client about the maximum sentence prior to sentencing, after he read the presentence report.[177]   *Gordon's* attorney testified that he in fact told his client that the maximum sentence would be much lower than it actually was, and he testified about the terms of the government's plea offer which would have been favorable to Gordon.[178]   The district court found, on habeas review, that *Gordon's* attorney had been incompetent and it concluded that, but for his erroneous advice, the result of the proceeding would have been different; that is, that Gordon would not have rejected the government's favorable offer.[179]   The Second Circuit affirmed that Gordon had shown both incompetence and prejudice, even under the "objective evidence" standard discussed, *infra*, at note 184, and concluded he was entitled to habeas relief.[180]   But without attorney testimony, Gadson cannot establish he received the bad advice he claims influenced his decision to reject the plea deal.

The government includes an email from Gadson's attorney where the attorney wrote that he may have been ineffective, and he would support an ineffective

---

[176] *Id.* at 380.
[177] *Id.* at 377.
[178] *Id.* at 378.
[179] *Id.*
[180] *Id.*

*United States v. Gadson*                                                                     Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                         Page 27

Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 27 of 54

assistance of counsel claim.[181]  But this admission does not state with specificity what defense counsel may have told Gadson about his sentence exposure.  Furthermore, Gadson provides no subsequent sworn statement from his trial counsel detailing his ineffective assistance.  Gadson does not explain in any of his pleadings why such a declaration or affidavit of counsel is absent, nor why it would not be necessary or helpful to include one.

Gadson asserts that an evidentiary hearing is necessary on this point because he declared "that he would have accepted the government's plea agreement had he known of his true sentencing exposure."[182]  However, without substantiation, "conclusory allegations do not warrant an evidentiary hearing on a § 2255 motion."[183]  The government also argues that the Seventh Circuit has found "a claim of ineffective assistance of counsel must be supported by objective evidence and not just the 'movant's own self-serving testimony.'"[184]  This Court can find no comparable precedent or case in the Ninth Circuit, yet the Seventh Circuit's reasoning is persuasive.  Gadson's own hindsight statements about his recollection of his attorney's advice, whether by declaration, spoken by him after conviction but before sentencing, or through signed reports from people who presumably wish to help him, do not comprise objective evidence.

---

[181]  Dkt. 675-5 at 1.  Gadson's attorney wrote, while attempting to negotiate a mid-trial plea deal, that due to his inexperience he "did not know (and therefore could not adequately explain to [Gadson]) all the legal ramifications" of Gadson declining the government's previous plea offer.

[182]  Dkt. 682 at 9.

[183]  *United States v. Finze*, 428 Fed. App'x. 672, 675 (9th Cir. 2011) (citing *United States v. Johnson,* 988 F.2d 941, 945 (9th Cir.1993)).

[184]  *See* Dkt. 675 at 9; *Blake v. United States*, 723 F.3d 870, 887 (7th Cir. 2013).

*United States v. Gadson*                                                                                     Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                              Page 28
Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 28 of 54

Gadson provides no other witness statements in support of his claims.[185] Notably missing is any authenticated declaration of Gadson's trial counsel in support of this § 2255 petition. By relying only on his own statements, Gadson cannot establish his trial counsel's performance was incompetent.

### (c)    Prejudice

Because Gadson has not established that his trial counsel performed deficiently, this Court need not evaluate whether Gadson was prejudiced by purported errors.[186] Assuming *arguendo*, however, that Gadson's arguments did persuade the Court that his lawyer's representation fell below a reasonably professional standard, he still cannot prove prejudice for the following reasons.

Under *Lafler v. Cooper*, to demonstrate prejudice when a plea offer is rejected based on erroneous advice, the "defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in

---

[185]   *But see* Dkt. 643 at 3.  Gadson also includes, without explanation, a page containing four typed, unsigned paragraphs in the form of a series of email-like communications apparently between Gadson and Brandon Haynes.  In it, Haynes states that he remembered hearing that the government offered Gadson a 10-year plea offer during trial.  He remembered that his attorney was certain that Gadson would lose at trial, so it did not matter whether Haynes testified against Gadson or not.  Haynes remembered his lawyer stating that Gadson's lawyer "must be crazy for thinking he could win at trial."  While these statements are perhaps interesting, this Court has no foundation for deeming them reliable, nor does Gadson establish their veracity or helpfulness; indeed, he does not mention them in his pleadings.

[186]   *Thomas v. Borg*, 159 F.3d 1147, 1152 (9th Cir. 1998).

*United States v. Gadson*                                                             Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                    Page 29

Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 29 of 54

fact were imposed."[187]  Gadson's focus is on the difference in the sentence he received and the sentence in his offer.  He fails to establish that he would have accepted a plea offer but for the errors he alleges his attorney made.

Gadson asserts that he suffered prejudice because he ultimately was sentenced to 25 years (300 months) in prison.  He cursorily states that he "most likely would have received a sentence within or near the 108–135 month guideline range" had he accepted the plea offer.[188]

Gadson argues in his pleadings that the reason he did not accept the plea offer was because his counsel incorrectly assessed his maximum sentence and because his counsel incorrectly characterized the case against him as weak.  However, the evidence suggests otherwise.  There is no indication besides Gadson's own words that he would have made a different decision in accepting one of the government's plea deals had he believed his likelihood of conviction to be more likely or his sentence to be more severe.  Despite whatever the attorney may have believed the strength of the government's case to be, the attorney's conduct supports the inference that he advised Gadson to plead guilty.

Indeed, the evidence shows that Gadson's attorney had filed a notice of intent to change plea; he engaged in negotiations on several occasions with prosecutors, including during trial when counsel assessed the government case was strong enough that it was likely that Gadson would be convicted.[189]  Gadson seems to claim his lawyer was ineffective merely for being unsuccessful at convincing Gadson to plead guilty.  But, a

---

[187] *Lafler v. Cooper*, 566 U.S. 156, 164 (2012).
[188] Dkt. 665 at 24.
[189] *See, e.g.*, Dkts. 675 at 11, 13; 687 at 2–4.

*United States v. Gadson*                                                    Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                        Page 30

Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 30 of 54

court can consider a defendant's actions when evaluating the reasonableness of his attorney's conduct.[190]

Gadson's proffered reasons why he rejected each of the government's offers are not consistent. One of the early offers was for fewer than 5 years. Gadson stated at his sentencing that he did not accept that plea offer because he was not guilty.[191] Following that reasoning, Gadson may well have rejected any offer to plead guilty, whether he believed his maximum sentence exposure was 15 years or much higher, and whether or not he believed the evidence against him to be weak. Because Gadson cannot establish that, but for any professional errors, the outcome would have been different, his claim of ineffective assistance of counsel during plea negotiations fails—even if he could successfully prove deficient representation.

## B.    Gadson is Not Entitled to Habeas Relief for Ineffective Assistance of Counsel During Motion Practice to Dismiss the Indictment

Gadson next contends that the prosecutor presented false testimony to the grand jury and his attorney was ineffective because he later failed to move to dismiss the indictment.[192] This argument fails because the testimony at issue was not false or even misleading, and therefore is not perjury. However, if the testimony were false, and the government knew it to be false, Gadson still would have to show that it was material to the indictment, which he cannot. Finally, even if the indictment were flawed due to material false testimony and a motion to dismiss indictment had been successful, Gadson suffered

---

[190] *Strickland v. Washington*, 466 U.S. 668, 691 (1984).
[191] Dkt. 541 at 50.
[192] Dkt. 665 at 25.

*United States v. Gadson*                                                      Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                      Page 31

Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 31 of 54

no prejudice because the government could have successfully re-indicted him on other evidence unrelated to the testimony in question.

### (1) Applicable law for ineffective assistance regarding false testimony

Perjury is a statement made under oath in which the declarant "willfully subscribes as true any material matter which he does not believe to be true."[193]  In reviewing a perjury challenge to an indictment, the court must determine whether the false testimony "substantially influence[d] the grand jury's decision to indict."[194]  "[I]f sufficient non-perjurious testimony exists to support the indictment, the courts will not dismiss the indictment due [to] the presence of perjured testimony."[195]

### (2) Investigator Thompson's testimony does not meet the definition of perjury

The testimony at issue from the grand jury is whether Investigator Thompson told the grand jury that the confidential informant, Joshua Voaklander, "specifically identified" Gadson as Ant.  Investigator Thompson did tell the grand jury that Voaklander had reported buying cocaine from Ant.  He also told the grand jury "Ant" was Gadson, which Investigator Thompson knew to be true from sources other than Voaklander.  He was not merely speculating about the identity of the person the informant called "Ant." Investigator Thompson did not know at the time of the grand jury, that the person Voaklander called "Ant" was actually someone else.  Because Investigator Thompson

---

[193]  18 U.S.C. § 1621.
[194]  *United States v. Brown*, 347 F.3d 1095, 1098 (9th Cir. 2003) (citing *Bank of Nova Scotia v. United States,* 487 U.S. 250, 256, (1988)).
[195]  *United States v. Brown*, 347 F.3d 1095, 1098 (9th Cir. 2003) (citing *United States v. Claiborne,* 765 F.2d 784, 791 (9th Cir. 1985)).

*United States v. Gadson*                                                                Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                                Page 32

Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 32 of 54

knew through other avenues that Gadson was Ant, he had no reason to clarify Voaklander's identification of Ant.

It is true that the testimony might lead the listener to believe that Voaklander bought drugs from four defendants, including Gadson. But the testimony is not intentionally false, nor is it intentionally misleading. Voaklander bought drugs from four people that he identified by initials. The investigator then explained his understanding of who the individuals were, naming four defendants charged in the indictment. It is true that the investigator said that Voaklander knew and supplied at least the first names of two of the defendants, Donte Edwards and Brandon Haynes. But the identification of the remaining two, including "Ant" as Anthony Gadson, can be attributed to Investigator Thompson alone.

Gadson argues that "Thompson knew that his testimony that Voaklander identified Gadson as one of the persons from whom he bought drugs was false at the time he testified before the grand jury."[196] Yet Gadson does not explain how Investigator Thompson knew this, and this Court can find no support for this contention in the record. This Court is persuaded that the language in the compound sentence that begins with "He specifically mentioned a person named D as this informant knew him as. . ." could reasonably be construed to mean simply that the informant "specifically identified" (but did not supply each of their first and last names) D, B, J, and Ant. Separating the clauses

---

[196] Dkt. 665 at 27.

*United States v. Gadson*                                                    Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                    Page 33
Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 33 of 54

of the transcribed sentence, it is reasonable to conclude that the investigator only represented that Voaklander knew D to be Donte Edwards and B to be "Brandon."

The investigator next explained to the grand jury that Brandon later was identified as Brandon Haynes. Here, he does not communicate that Voaklander "specifically identified" Brandon Haynes by that name. Investigator Thompson never again attributed the identification of the remaining individuals' legal names to Voaklander. He instead says "J, Joshua Haynes, and Ant who is Anthony Gadson." It is reasonable to interpret Investigator Thompson's run-on sentence this way, because he knew from multiple avenues Gadson went by Ant.[197] It would be a long reach to characterize this statement as false, let alone as one the government knew to be false. It would be incorrect to declare it perjury. And, as such, there is no duty of the prosecution to inform.

The Court makes the factual finding that this testimony was not false, and therefore cannot be perjury.

### (3) Presenting the testimony was not a due process violation

Gadson raises this second habeas claim based on the doctrine that "[a] conviction obtained using knowingly perjured testimony violates due process."[198] To prove a due process violation, "the petitioner must show that (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the

---

[197] This interpretation is consistent with Investigator Thompson's police report dated February 19, 2010. *See* Dkt. 664-2 at 1 ("I know from knowledge of the Fairbanks area, speaking with sources of information and confidential informants . . . 'Ant' is Anthony Gadson.").

[198] *United States v. Brown*, 347 F.3d 1095, 1098 (9th Cir. 2003) (citing *United States v. Claiborne,* 765 F.2d 784, 791 (9th Cir. 1985)).

*United States v. Gadson*                                        Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                Page 34
Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 34 of 54

testimony was actually false, and (3) that the false testimony was material."[199] "Whenever the prosecutor learns of any perjury committed before the grand jury, he is under a duty to immediately inform the court and opposing counsel—and, if the perjury may be material, also the grand jury—in order that appropriate action may be taken."[200]

Gadson argues that the government knew that the testimony was false when the investigator "interviewed Voaklander again before trial and learned that Voaklander identified Joshua Haynes as 'Ant,' not Gadson."[201] Gadson asserts that, upon learning this discrepancy, the government should not have allowed the indictment to stand. But, because the grand jury testimony does not solely attribute the identification of "Ant" as Gadson to Voaklander, there was no such duty. Investigator Thompson testified at Gadson's trial. There he admitted making the statement in his grand jury testimony, and explained why. The defense cross-examined Investigator Thompson about this, and Investigator Thompson explained that he knew "Ant" was Gadson from sources other than Voaklander. Investigator Thompson, as the government points out, had no reason to believe that Voaklander's image of "Ant" was someone other than Gadson when he testified at grand jury about Ant's identity.[202]

Gadson cannot claim that this evidence was material such that he would not have been indicted without it. Other evidence to support the indictment included: Gadson's fingerprint on the shoebox containing cocaine at the Fouts residence, his visits

---

[199] *Soto v. Ryan*, 760 F.3d 947, 958 (9th Cir. 2014) (citing *United States v. Zuno–Arce*, 339 F.3d 886, 889 (9th Cir. 2003)).

[200] *United States v. Basurto*, 497 F.2d 781, 785–86 (9th Cir. 1974).

[201] Dkt. 682 at 11.

[202] Dkt. 675 at 23.

*United States v. Gadson*                                                    Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                  Page 35

Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 35 of 54

to and association with his brothers and friends who lived at the Fouts house, surveillance of Gadson's residence, and cash found with the odor of narcotics in Gadson's possession.[203] This evidence is sufficient to support the charges in the indictment under the probable cause standard.

Gadson cannot establish that a motion to dismiss indictment would have succeeded, because he has not demonstrated any of the elements required to show his indictment was achieved as a result of perjury. The statement was not intentionally false nor misleading; the government did not know nor should have known that the statement was false; and, even if the statement had been excised from the evidence the grand jury considered, ample other evidence presented supported probable cause to indict Gadson.

### (4) Gadson cannot establish prejudice because the government could have re-indicted Gadson

Gadson fails to explain why the dismissal of his indictment would grant him relief. Had a motion to dismiss indictment been successful, the government could have presented the indictment once again to the grand jury, omitting the questioned statement. By including fingerprint evidence and evidence of Gadson's presence at the Fouts residence, the government would have reached the probable cause standard to secure a grand jury indictment. Gadson's argument that the evidence remaining is not sufficient for an indictment is unpersuasive. The burden is on Gadson to show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

---

[203] *Id.* at 24.

*United States v. Gadson*                                                  Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                    Page 36
Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 36 of 54

different,"[204] which he has not met.  Gadson is not entitled to habeas relief on his second claim.

## C.    Gadson is Not Entitled to Habeas Relief for Ineffective Assistance of Counsel for Failing to Suppress Evidence Pursuant to a Search Warrant

Gadson contends that his attorney was ineffective for failing to challenge the search warrant of his Gillam Way residence for lack of probable cause and for failing to challenge potential *Franks* statements in the search warrant affidavit.[205]  To be granted relief on these grounds, Gadson must first show that his attorney was incompetent for failing to file a suppression motion for lack of probable cause and a *Franks* violation. Second, he must show that such a motion would have been successful and the evidence from the search would have been suppressed.

### (1)    Applicable law regarding search warrants

### (a)    Probable cause

Probable cause exists whenever the totality of the circumstances establishes "a fair probability that contraband or evidence of a crime will be found in a particular place."[206]

> The process does not deal with hard certainties, but with probabilities.  Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as fact finders are permitted to do the same—and so are law enforcement officers.[207]

---

[204] *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (citing *Strickland*, 466 U.S. at 694).
[205] Dkts. 665 at 29; 682 at 12.
[206] *Illinois v. Gates*, 462 U.S. 213, 238 (1983).
[207] *Id.* at 232–33 (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)).

*United States v. Gadson*                                                                    Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                              Page 37

Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 37 of 54

Thus, probable cause is "not readily, or even usefully, reduced to a neat set of legal rules."[208]  Instead, it "is a fluid concept—turning on the assessment of probabilities in particular factual contexts[.]"[209]  A probable cause determination requires the supporting affidavit to "establish a reasonable nexus between the crime or evidence and the location to be searched."[210]  That said, the determination does not require that the items sought are more likely than not to be found in the place to be searched; only that it would be reasonable to look for the items in that place.[211]

An issuing judicial officer's probable cause determination must be affirmed if there is a "substantial basis for . . . conclud[ing]" probable cause existed.[212]  Search warrants are frequently drafted "by non-lawyers in the midst and haste of a criminal investigation."[213]  "A grudging or negative attitude by reviewing courts [would] tend to discourage police officers from submitting their evidence to a judicial officer before acting.[214]  Therefore, probable cause determinations may be based in part on reasonable inferences drawn from the facts alleged in the application.[215]  That law permits an issuing judicial officer to draw inferences about where evidence is likely to be kept based on the nature of the evidence and the type of offense.[216]  Accordingly, the standard of review is

---

[208] *Id.* at 233.

[209] *Id.*

[210] *United States v. Crews,* 502 F.3d 1130, 1136–37 (9th Cir. 2007) (citing *United States v. Chavez-Miranda,* 306 F.3d 973, 978 (9th Cir. 2002)).

[211] *United States v. Terry,* 911 F.2d 272, 279 (9th Cir. 1990).

[212] *Jones v. United States,* 362 U.S. 257, 271 (1960).

[213] *United States v. Ventresca,* 380 U.S. 102, 108 (1965).

[214] *Id.*

[215] *United States v. Davis,* 530 F.3d 1069, 1084 (9th Cir. 2008) (citing *United States v. Gourde,* 440 F.3d 1065, 1071 (9th Cir. 2006) (en banc)).

[216] *Terry,* 911 F.2d at 275 (citing *United States v. Angulo-Lopez,* 791 F.2d 1394, 1399 (9th Cir. 1986); *United States v. Hendricks,* 743 F.2d 653, 655 (9th Cir. 19984), *cert. denied,* 470 U.S. 1006 (1985)).

*United States v. Gadson*                                                    Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                    Page 38

Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 38 of 54

"less probing than de novo review and shows deference to the issuing magistrate's determination."[217]

That said, a probable cause determination can never rest solely on the affiant's unsupported conclusions.[218] The judicial officer must be provided with sufficient facts from which the judicial officer may independently "draw the inferences and form the conclusions necessary to a determination of probable cause."[219]

### (b)     Good faith exception to the exclusionary rule

The exclusionary rule is a judicially created remedy designed to compel respect for the Fourth Amendment.[220] However, evidence obtained under an invalid warrant should not be suppressed if the officer obtaining the warrant or performing the search relied in good faith on the warrant's validity.[221] The inquiry is one of objective reasonableness, i.e., "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization."[222] The government has the burden of demonstrating that the good faith exception to the exclusionary rule applies.[223] An officer's reliance on a defective warrant is not reasonable, *inter alia,* "when the [supporting] affidavit is so lacking in indicia of probable cause that official belief in its existence is objectively unreasonable" or "when the warrant is so facially deficient that

---

[217]   *United States v. Hernandez,* 937 F.2d 1490, 1494 (9th Cir. 1991) (quoting *United States v. Angulo–Lopez,* 791 F.2d 1394, 1396 (9th Cir. 1986)).
[218]   *United States v. Underwood,* 725 F.3d 1076, 1081 (9th Cir. 2013).
[219]   *United States v. Rubio,* 727 F.2d 786, 795 (9th Cir. 1983).
[220]   *Davis v. United States,* 564 U.S. 229, 236 (2011).
[221]   *United States v. Clark,* 31 F.3d 831, 835 (9th Cir. 1994) (citing *United States v. Mendonsa,* 989 F.2d 366, 369 (9th Cir. 1993)).
[222]   *United States v. Leon,* 468 U.S. 897, 922 n.23 (1984).
[223]   *Underwood,* 725 F.3d 1076 at 1085.

*United States v. Gadson*                                                                    Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                     Page 39

Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 39 of 54

executing officers cannot reasonably presume it to be valid (i.e., it fails to specify the place to be searched or the things to be seized)."[224]  Police reliance on a warrant authorizing a search that fails to link the suspect or the criminal activity to the place to be searched is not objectively reasonable and the good faith exception to the exclusionary rule cannot be invoked.[225]

(c)     *Franks* **hearing**

There is a presumption of validity with respect to an affidavit supporting a search warrant.[226]  A *Franks* hearing requires more than a mere allegation of bad faith.[227]  Instead, the Ninth Circuit has established five requirements for a *Franks* hearing:

(1)     the defendant must allege specifically which portions of the warrant affidavit are claimed to be false [or which facts were omitted];

(2)     the defendant must contend that the false statements or omissions were deliberately or recklessly made;

(3)     a detailed offer of proof, including affidavits, must accompany the allegations;

(4)     the veracity of only the affiant must be challenged; [and]

(5)     the challenged statements must be necessary for probable cause.[228]

---

[224]  *United States v. Luong,* 470 F.3d 898, 902 (9th Cir. 2006) (citing *Leon,* 468 U.S. at 914, 923; *United States v. Johns,* 948 F.2d 599, 604–05 (9th Cir. 1991)).

[225]  *United States v. Hove,* 848 F.2d 137, 139 (9th Cir. 1988)

[226]  *Franks v. Delaware,* 438 U.S. 154, 155–56 (1978).

[227]  *United States v. Chesher,* 678 F.2d 1353, 1360 (9th Cir. 1982).

[228]  *United States v. Perdomo,* 800 F.2d 916, 920 (9th Cir. 1986) (quoting *United States v. DiCesare,* 765 F.2d 890, 894–95 (9th Cir. 1985)).

*United States v. Gadson*                                    Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                    Page 40

Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 40 of 54

These requirements flow from *Franks v. Delaware*.[229]  The Fourth Amendment requires a *Franks* hearing only when a defendant makes a substantial preliminary showing that a search warrant affidavit contained material false statements, made either knowingly and intentionally, or in reckless disregard to the truth, which, if excised, would negate the probable cause finding.[230]  Suppression is required if, at the *Franks* hearing, the defendant establishes the alleged perjury or reckless disregard by a preponderance of the evidence and demonstrates that, without the materially false information, the warrant would not have issued.[231]  This holding has been extended to facts that are deliberately or recklessly omitted from a warrant application, which, if included, negate the probable cause determination.[232]

A *Franks* hearing is not available upon a mere request.  Instead, the party asking for a *Franks* hearing must establish the material falsehood or the material omission by witness affidavit or by other reliable witness statements.[233]  If such support is missing, the *Franks* hearing applicant must satisfactorily explain why the support is missing.[234]  Conclusory allegations or a desire to cross examine the affiant will not support a *Franks* hearing request.[235]

---

[229]  438 U.S. 154 (1978).
[230]  *Id.*
[231]  *Id.* at 156.
[232]  *United States v. Stanert,* 762 F.2d 775, 781 (9th Cir. 1985).
[233]  *Franks*, 438 U.S. at 171.
[234]  *Id.*
[235]  *Id.*

*United States v. Gadson*                                                   Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                     Page 41

Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 41 of 54

**(2)**      **Gadson cannot show his attorney was incompetent for failing to move to suppress evidence because that motion would have been denied**

Gadson generally asserts that the search warrant was not supported by probable cause.[236]  The information in the affidavit, he says, was stale at fourteen months, and it did not provide a sufficient nexus connecting Gadson's residence to criminal activity.[237]  He argues that the good faith exception does not apply because the affidavit was "so lacking in indicia of probable cause" that it was unreasonable for officers to rely on it.[238]  Finally, Gadson argues that the affidavit contains false information and omits material facts that, had the affidavit been properly drafted without false statements and with disclosure of the informant's deal with law enforcement, would not have established probable cause to search Gadson's Gilliam Way residence.[239]

But, Gadson's argument fails because he cannot establish that his lawyer's conduct was deficient.  Gadson cannot meet the high bar in *Strickland* that choosing not to file a motion to suppress evidence was not in fact a reasoned, tactical choice.[240]  This is especially because such a motion would have been unlikely to succeed.

**(a)**      **The affidavit in support of the search warrant contained facts that supported probable cause**

Gadson has not shown that the search warrant was not supported by probable cause.  "Probable cause requires only a fair probability or substantial chance of criminal

---

[236] Dkts. 665 at 29–30; 682 at 12–15.
[237] Dkts. 665 at 33; 682 at 13–14.
[238] Dkts. 665 at 29–30; 682 at 12–15.
[239] Dkts. 665 at 36; 682 at 15–17.
[240] For discussion, *see* Section IV.A.(1), *supra*.

*United States v. Gadson*       Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]       Page 42
Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 42 of 54

activity, not an actual showing that such activity occurred."[241] The Court should give substantial deference to the factfinder's probable cause determination.[242] There was a sufficient basis to conclude that there was a fair probability that evidence of a crime could be found in Gadson's Gilliam Way residence. The affiant relied on multiple reports from several sources, based on his lengthy investigation into Gadson and his co-conspirators, along with his general experience and understanding of drug crime.

Gadson cannot show that the information in the warrant was stale. Whether probable cause to support a search is met is not a bright line rule based on merely counting the time that has passed since the discovery of information. In some cases, probable cause may be expected to disappear within days. In drug conspiracy cases, probable cause may continue over months.[243] The government cites out-of-circuit cases to support the notion that a "regenerating conspiracy" may give rise to many months of information supporting a probable cause finding.[244]

In this case, evidence showed that the individuals involved with this suspected drug trafficking conspiracy engaged in their behaviors over a long period of time. It would be appropriate to consider evidence from several months earlier, because ongoing evidence showed that Gadson still was spending time with the same people, and because short-term traffic consistent with drug sales occurred at Gadson's house. This evidence

---

[241] *Murdock v. Stout*, 54 F.3d 1437, 1441 (9th Cir. 1995).
[242] *United States v. Flores*, 679 F.2d 173, 176 (9th Cir. 1982).
[243] Dkts. 665 at 36; 682 at 15–17.
[244] Dkt. 675 at 28.

*United States v. Gadson*                                    Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                Page 43

Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 43 of 54

was sufficient to create a nexus between the crimes believed to be committed and Gadson's residence at Gilliam way.

> **(b)** **The good faith exception to the Fourth Amendment's exclusionary rule applies**

The *Leon* good faith exception would apply here.  If a search warrant is granted but is later found not to be supported by probable cause, suppression is not necessarily the remedy.  An affidavit must be "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."[245]

Here, even if the search warrant were lacking in probable cause, it was not "so lacking" that it would have been unreasonable for a reasonably well-trained officer to rely in good faith on it.[246]  Therefore, the good faith exception would apply to allow the proceeds of the search to be admitted as evidence.

> **(3)** **Gadson cannot show his attorney was incompetent for failing to request a Franks hearing**

Gadson's *Franks* challenge is not persuasive.

Before being entitled to a hearing, Gadson must make a substantial preliminary showing that the statements were made intentionally, knowingly, or with reckless disregard of the truth.  He cannot, for two reasons:  each of the statements technically are truthful; and the government did not learn about any discrepancy until just before trial, months after the search warrant was presented to the judicial officer for a

---

[245] *United States v. Leon*, 468 U.S. 897, 923 (1984) (citing *Brown v. Illinois*, 422 U.S. 590, 611 (1975)).

[246] *United States v. Hove*, 848 F.2d 137, 139 (9th Cir. 1988) (a probable cause determination is valid if the "affidavit was sufficient to 'create disagreement among thoughtful and competent judges as to the existence of probable cause'") (citing *Leon*, 468 U.S. at 926).

*United States v. Gadson*  Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]  Page 44

Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 44 of 54

probable cause determination. Because he cannot make this showing, he is not entitled to a *Franks* hearing.

In his § 2255 motion, Gadson lists numerous statements from the affidavit which he claims are inaccurate.[247] However, with respect to these false or misleading statements or omissions, Gadson did not provide any evidence beyond his bare assertions to support his argument that the statements or omissions were made recklessly or intentionally misleading.[248] Gadson has not met the *Franks* requirement for an offer of proof in the form of "[a]ffidavits or sworn or otherwise reliable statements of witnesses" or by explaining why he has not provided them.[249]

Gadson cites to two out-of-circuit cases to suggest that the mere existence of "highly relevant" adverse information and omissions in an affidavit could support a finding that they were made or omitted at least recklessly.[250] He provides no Ninth Circuit authority stating the same. In the Seventh Circuit case, an informant was paid $450 after a search for the information he contributed to the search warrant, he had been an informant for six years, he had committed crimes during that time, and law enforcement previously had paid him for information.[251] None of that information was included in the search warrant.[252] In the Eighth Circuit case, the affiant police officer explained that a drug-sniffing dog had shown an interest in a package addressed to the defendant, but he omitted

---

[247] *See* Dkts. 665 at 27–29; 682 at 15–17.
[248] *Accord United States v. Thrift*, 729 Fed. App'x. 607, 608 (9th Cir. 2018) (unreported) (citing *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017)).
[249] *Franks*, 438 U.S. at 171.
[250] Dkt. 682 at 16.
[251] *See United States v. Glover*, 755 F.3d 811, 815 (7th Cir. 2014).
[252] *Id.*

*United States v. Gadson*                                                    Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                    Page 45
Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 45 of 54

the relevant fact that the canine failed to actually alert in the way it was trained to do.[253] The court found that the omission "deliberately misle[d] the magistrate judge."[254]

Considering the facts of this case in light of the analysis of these out-of-circuit cases, this Court cannot agree that the alleged inaccuracies that Gadson identifies rise to the level of "highly relevant" such that this Court could infer a mental state of recklessness or intentionally misleading the probable cause evaluator. At the time of the warrant, Investigator Thompson believed that Voaklander used the nickname "Ant" to refer to Gadson. Based on the information available at the time, this was a reasonable belief. The affidavit described Investigator Thompson's belief at his initial investigation that Gadson lived at the Fouts residence. This statement is not misleading, and Gadson has not provided information to refute the idea that he spent "considerable amounts of time" at the Fouts house—as Investigator Thompson wrote in the original affidavit to search the Fouts residence. As the government points out, Gadson's two fingerprints on (the outside of) the box actually were the only recoverable fingerprints on the box, and no fingerprint data were recovered from the cocaine packaging inside the box.[255] This Court does not find that these facts were intentionally or recklessly misleading.

Gadson's final claim for a *Franks* hearing is that the affidavit failed to mention that Voaklander received a dismissal of his felony charges in exchange for his information connecting Gadson to drug dealing at the Fouts residence.[256] Again, Gadson

---

[253] *See United States v. Jacobs*, 986 F.2d 1231, 1234 (8th Cir. 1993).
[254] *Id.*
[255] Dkt. 675 at 32–33.
[256] Dkt. 682 at 12.

cites to one of the out-of-circuit cases, *Glover*, for the proposition that when a probable cause determination is a close call, all information about an informant's credibility is "likely to be material."[257]  However, in the instant case, the probable cause determination was not a close call, and inclusion of this information would not have impacted the probable cause finding.

### (4)    Gadson cannot disprove the notion that his attorney made a strategic decision not to file a motion to suppress evidence

Gadson argues that a motion to suppress would have been successful.  That argument is not persuasive.  Even if this were a closer question, however, Gadson cannot overcome the *Strickland* presumption that his attorney acted "within the wide range of reasonable professional assistance."[258]  Given the unlikelihood of success of a motion to suppress, the choice not to file it may certainly "be considered sound trial strategy."[259]

### (5)    Even if he could establish incompetence for failing to suppress evidence, Gadson cannot demonstrate a reasonable probability that the outcome would have been different

Gadson cannot show prejudice.  Had his attorney filed a motion to suppress evidence, it would have been denied and the evidence at trial would have remained the same.  Additionally, other evidence at trial existed to inculpate Gadson, namely:  the testimony at trial of Donte Edwards and Joshua Voaklander,[260] who were cross-examined;

---

[257] *Id.*

[258] *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 2065, 80 L. Ed. 2d 674 (1984).

[259] *Id.* (citations omitted).

[260] Voaklander testified at trial that, although he initially believed "Ant" to be someone other than Gadson, he recognized Gadson and used to see him in the Fouts residence during about half of the dozen or so times that Voaklander and an unnamed associate would purchase crack cocaine.  Dkt. 553 at 20, 23, 24, 35–36, 50–51.  He testified that, in drug dealing culture, anyone who was present and able to observe a drug buy would not be a civilian friend, but most often would be someone who had some involvement with the drug dealing because of the danger around "the game."  *Id.* at 55.

*United States v. Gadson*                                                          Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                              Page 47

Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 47 of 54

evidence of the surveillance of Gadson; fingerprint evidence and other evidence collected

from the Fouts residence; and jail phone calls after Gadson's arrest containing Gadson's

statements asking about money seized from his house and garage during the search of the

Gilliam residence, speaking in code about locating other items, speculating who the

informant could be, and an assessment that "it's not looking good" for Gadson or

Edwards.[261] Because Gadson cannot show that the results of his trial would have been

different but for his counsel's decision not to file a motion to suppress, he is not entitled to

relief on this claim.

### D. Gadson is Not Entitled to a New Trial Because of Donte Edwards's Recantation of His Trial Testimony

Finally, the Court must evaluate conflicting statements by Donte Edwards,

one of Gadson's original co-defendants and a witness at trial, who testified: (1) he had

purchased cocaine from Gadson, (2) Gadson had told him he was worried about a drug

supplier's arrest during a traffic stop because it "could have messed up a lot of things," and

(3) he saw Brandon Haynes give Gadson cash in a duffle bag.[262] Gadson argues that these

statements are "critical" to his conviction. That may well be, but this Court cannot find

that Edwards's witness testimony at trial was false. Edwards appeared truthful at trial. His

other "statements"—from his initial statement that he only purchased marijuana from

Gadson, nothing more, to his recantation—are vague at best, and strongly suggest coaching

---

[261] Dkt. 552 at 182, 188, 190–91, 193, 198, 200, 203.
[262] Dkt. 665 at 37.

on the part of Gadson or his supporters. His initial statement at the outset of the investigation likely was motivated by self-interest in reducing his own culpability.

Edwards supplied two affidavits, dated in 2016, stating that he now recants his trial testimony against Gadson.[263] In his affidavits, Edwards also says that law enforcement pressured him to testify against Gadson.[264] If that were true, Gadson argues, he suffered a due process violation.[265] Gadson asks this Court to hold an evidentiary hearing to examine Edwards's conflicting statements.[266] In response, the government interviewed Edwards in 2017[267] and again in 2018, and Edwards partially repudiated his recantation.[268]

The court views witness recantation with "extreme suspicion."[269]

Many of Edwards's statements, dating back to before the trial, were believed to be unreliable. First, Edwards told officers that he had purchased marijuana, but no other drugs, from Gadson.[270] Then at trial, Edwards made, and was challenged on, inconsistent

---

[263] Dkt. 664-5 at 2–4, 6–8.
[264] *See id.*; Dkt. 665 at 38.
[265] Dkt. 665 at 38.
[266] *Id.*
[267] Dkt. 675-8.
[268] Dkt. 687-1 at 3.
[269] *Carriger v. Stewart*, 132 F.3d 463, 483 (9th Cir. 1997) (Kozinski, J., dissenting). Repudiated recantations, as occur here, are particularly suspect. "Recanting testimony is easy to find but difficult to confirm or refute: witnesses forget, witnesses disappear, witnesses with personal motives change their stories many times, before and after trial. A *repudiated* recantation . . . is even less worthy of serious consideration. One respected commentator advises that a motion for a new trial based on a repudiated recantation usually isn't worth the time it takes to prepare: 'Although [a repudiation] does suggest that the witness is completely irresponsible, the motion appears to have little or no chance of success. With the repudiation of the recantation, it becomes merely impeaching and could be used at a new trial only for the purpose of cross-examining the witness, and not as substantive evidence.'" *Id.* at 483–84 (quoting MOORE'S FEDERAL PRACTICE § 633.05[2] (3d ed.1997)).
[270] Dkt. 664-5 at 7.

*United States v. Gadson*                                                                 Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                  Page 49

Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 49 of 54

statements made at that time.[271]  He testified that he had purchased cocaine from Gadson in 2010–2011.[272]  He testified that he had seen kilograms of cocaine at Gadson's Gilliam Way residence in April 2011.[273]  He testified that he saw someone named the "Transporter" at Fouts numerous times and that Gadson said something implying that the Transporter's traffic stop could have "messed up a lot of things."[274]  He testified that he saw Brandon Haynes give Gadson a duffle bag full of money.[275]

Then, recanting, on July 7, 2016, Edwards swore:

- I never got drugs other than weed from Gadson.

- Officer Bell, my attorney, and the prosecutor pressured me into saying that I did get drugs from Gadson by threatening me with jail time.

- Officer Bell coached me on how to lie and to give the reason for the lie that I feared for my life.

- None of the drugs, guns, or money in Fouts belonged to Gadson.

- I initially said that I didn't get any drugs other than weed from Gadson when I first was interviewed.[276]

In an affidavit dated September 3, 2016, Edwards swore:

- Gadson is guilty for selling me weed but nothing else.

- I did see Gadson spending time and bringing weed to the Fouts residence, but I did not see Brandon Haynes give Gadson cash.

---

[271] Dkt. 675 at 36.
[272] Dkt. 682 at 20.
[273] Id.
[274] Dkt. 665 at 37.
[275] Id.
[276] Dkt. 675 at 36.

*United States v. Gadson*                                      Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]        Page 50

Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 50 of 54

- The transporter didn't exist.

- I was scared about my own case and Investigator Bell told me to say I got cocaine from Gadson when the truth was I only ever received weed.[277]

After these affidavits were filed, the government interviewed Edwards. On May 18, 2017, Edwards told Detective Thompson that:

- Officer Bell and Edwards's lawyer were pressuring him to say that Gadson sold him cocaine when he had only ever received marijuana from Gadson.[278]

- He said things about Gadson that weren't true.[279]

- He didn't see Gadson selling cocaine.[280]

- Trial was a long time ago and he didn't remember word for word what he said at trial.[281]

- Someone tried to get Edwards to write his recantation, but Edwards did not name who.[282]

- He wrote the recantation himself.[283]

- Edwards saw "B" give Gadson money two or three times.[284]

- He knew the Transporter did exist.[285]

---

[277] *Id.*

[278] Dkt. 675-8 at 7. Later, Edwards explains his lawyer pressured him because Edwards wanted to go to trial, but his exposure was 20–30 years. *Id.* He said his lawyer told him the only way to get a lesser sentence was to testify against Gadson.

[279] *Id.* at 5.

[280] *Id.* at 10.

[281] *Id.* at 10–11.

[282] *Id.* at 9–10.

[283] *Id.* at 11.

[284] *Id.* at 12.

[285] *Id.*

*United States v. Gadson*                                                    Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                    Page 51

Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 51 of 54

- He couldn't remember how Officer Bell told Edwards to insert "cocaine" for "marijuana" when testifying about the drugs he got from Gadson.[286]

- Gadson's family, namely his mother, tried to get Edwards to recant.[287]

- Edwards submitted his recantation in part because of Gadson's family.[288]

- Edwards doesn't think he was pressured into writing the recantation even though Gadson's family were "telling" him to do it because he is a grown man.[289]

Edwards called Investigator Thompson on February 8, 2018.[290] Investigator Thompson reported that Edwards said:

- He did not write the recantation letter.

- He was "kind of forced and threatened" to write it because someone he didn't know called him and said "Alaska [is] only so big" and they knew where Edwards lived and worked.

- That person told him to "write that."

- He didn't want to go to jail and he wanted assurance from the prosecutor that no new charges would be filed against him.[291]

Edwards's sworn statements are all over the place, directly in conflict with one another, and often repeated. From the transcript, it appears that Edwards equivocates

---

[286] *Id.* at 13.
[287] *Id.* at 17.
[288] *Id.* at 18.
[289] *Id.* at 26.
[290] Dkt. 687-1 at 3.
[291] *Id.*

*United States v. Gadson*                                                    Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]                    Page 52

Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 52 of 54

and avoids answering some of the interviewer's questions, for example, whether the statements in the affidavits are "some that are right and some that are wrong."[292]

If the recantation is to be believed, a defendant is entitled to a new trial only when he can show that the recanted testimony was material to his conviction.[293] It is possible that on review, Donte Edwards's testimony that he bought cocaine from Gadson and saw multiple kilograms of cocaine at Gadson's residence, along with his testimony about cash transfers, would be viewed as important evidentiary support for a jury's decision to convict. But, where Gadson's claim fails is in demonstrating that Edwards's 2016 affidavits are legitimate recantation testimony. The government cites cases that witness recantation, especially from a co-defendant, should be "met with extreme skepticism."[294] This is even more so when, as here, a witness recants his recantation and later states that he was pressured by the defendant and the defendant's family to write an affidavit that "was not entirely true."[295]

At the time of trial, the government argues, Edwards already had made inconsistent statements, which were discussed in front of the jury.[296] In the situation where a witness, particularly a co-defendant, changes his story back and forth several times in his own self-interest, it is appropriate to find that recantation testimony "at best unreliable."[297] Because Gadson cannot establish that Edwards's testimony at trial was false, he has not

---

[292] Dkt. 675-8 at 9.
[293] Dkt. 675 at 35–36.
[294] *Id.* at 36–37.
[295] *Id.* at 35, 38–39.
[296] *Id.* at 36.
[297] *United States v. Zuno-Arce*, 339 F.3d 886, 889–90 (9th Cir. 2003).

*United States v. Gadson*  Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]  Page 53

Case 4:11-cr-00010-RRB  Document 691  Filed 09/18/18  Page 53 of 54

established that there is "newly discovered evidence," and therefore he is not entitled to a new trial on this final claim.

## V.   CONCLUSION

Based on the foregoing analysis, the Court **DENIES** Gadson's amended 28 U.S.C. § 2255 motion to vacate his judgment of conviction and sentence at Docket 664.

IT IS SO ORDERED this 18th day of September, 2018, at Anchorage, Alaska.

_/s/ Ralph R. Beistline_
RALPH R. BEISTLINE
Senior United States District Judge

_United States v. Gadson_      Case No. 4:11-cr-00010-04-RRB
Order Denying Amended 28 U.S.C. § 2255 Motion to Vacate [Docket No. 664]      Page 54
Case 4:11-cr-00010-RRB   Document 691   Filed 09/18/18   Page 54 of 54